UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
BERNARD LAM,

                              Plaintiff,

        - Against -

ATLAS CAPITAL GROUP, LLC (Landlord) and its directors;
23RD STREET OWNER, LLC. (Landlord) and its directors;
2324 REALTY LLC (former Landlord);
ACG PROPERTY MANAGEMENT LLC (Managing Agent /
Landlord) and its directors;
THE DERMOT COMPANY, INC (former Managing Agent /
Landlord) and its directors;
THE DERMOT COMPANY, LP (former Managing Agent /
Landlord) and its directors;
HELMSLEY-SPEAR, INC (former Managing Agent / Landlord)
JEFFREY A. GOLDBERGER (Landlord);
ANDREW B. COHEN (Landlord);
LATOYA WILLIAMS (Managing Agent / Landlord);
JAIME ROMANO (Managing Agent / Landlord);
JOEL ORNSTEIN (former Managing Agent / Landlord);
PETER ADAM ROSE, d/b/a ROSE & ROSE (Attorney);
TODD ANDREW ROSE, d/b/a ROSE & ROSE (Attorney)

                              Defendants

-------------------------------------------------------------------X

**COMPLAINT**

**Index No.**

# 17CV 5838

**<u>JURY TRIAL
DEMANDED</u>**

RECEIVED
SDNY PRO SE OFFICE
2017 AUG -1  PM 2:30
S.D. OF N.Y.

**TO THE UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**

        The complaint of the plaintiff, BERNARD LAM, respectfully shows and alleges as

follows:

## <u>PRELIMINARY STATEMENT</u>

1.      This action is a landlord-tenant dispute, which includes, *inter alia*, elements of breach

        of contract, tenant harassment, reckless endangerment, unlawful interception of oral

        communications and personal injury.  Plaintiff has endured deplorable conditions

        throughout his tenancy, including repeated deprivation of essential services and

repeated exposures to unsanitary and unsafe conditions, and private nuisances. The conditions worsened as the current owner, upon information and belief, undertook to aggressively convert rent stabilized apartments in the building complex ("the Complex" or "the Premises") where Plaintiff resides into market-rate rental apartments. The number of regulated housing rentals of the Complex has dwindled drastically since the former Landlord-Defendant 2324 Realty LLC had sought to sell the Complex to the current Landlord-Defendant 23rd Street Owner LLC around 2013.

2.    The aforementioned unsanitary, unsafe and oppressive conditions have caused and contributed to the bodily injuries and emotional distress suffered by Plaintiff.

3.    This action seeks: a) the correction and cure of Housing Maintenance Code violations; b) a finding that the apartment where Plaintiff resides is subject to rent stabilization pursuant to the Administrative Code of the City of New York ("AC") § 26-507; c) a finding that Landlord-Defendants have breached the warranty of habitability; d) a finding that Landlord-Defendants have illegally overcharged Plaintiff; e) a finding that Landlord-Defendants have neglected their duty which resulted in injury; f) a finding that Landlord-Defendants commenced vexatious and frivolous litigations against Plaintiff; g) a finding that Landlord-Defendants have intentionally intercepted, endeavored to intercept, or procured other person to intercept an oral communication as defined in 18 U.S.C. 2511; h) a finding that Landlord-Defendants' conduct constitutes harassment as defined by AC § 27-2004; and i) judgments and awards in favor of Plaintiff against those Defendants that are being held accountable and liable in connection with the causes of action as enumerated herein.

4.    Plaintiff seeks the tolling of the applicable statute of limitations on the relevant causes of action so entitled pursuant to CPLR § 205 (b).

5.   Plaintiff seeks this Court to pierce any corporate veil that may be shielding those with

the knowledge of, or have commissioned, any such wrongdoing who have complete

dominion and control over the business and affairs of 23rd Street Owner, LLC, and have

exercised such control in the detriment of Plaintiff that has resulted in his injury or loss.

## JURISDICTION AND VENUE

6.   <u>Jurisdiction.</u>  This Court has original and subject matter jurisdiction pursuant to 18

U.S.C. §§ 2511(1)(a) and (b) and 18 U.S.C. §§ 2520.

7.   Supplemental jurisdiction over Plaintiff's State and City Law claims is conferred by 28

U.S.C. § 1367(a).

8.   This Court has jurisdiction to hear and decide on Plaintiff's State and City Law claims

based on the Doctrine of Pendant Jurisdiction because those claims arose from a

common nucleus of operative fact or transaction.

9.   This Court is empowered to issue declaratory judgment and further relief pursuant to 28

U.S.C. §§ 2201 and 2202.

10.   This Court has concurrent jurisdiction with the State courts over federal cases pursuant

to 28 U.S.C. §§ 1331 and 1332.

11.   <u>Venue.</u> Venue is proper in this Court under 28 U.S.C. § 1391 (b) and (c) because

Defendants conduct business and can be found in the Southern District of New York

and because the acts and omissions giving rise to this action occurred in the Southern

District of New York.

## JURY DEMAND

12.   Plaintiff demands a trial by jury on each and every claim to which he is so entitled.

**PARTIES**

13.  Plaintiff BERNARD LAM ("Plaintiff") is the tenant of 220 West 24th Street, Apartment
     #1T, New York, New York, 10011 ("the Apartment") since 2005.

14.  Defendant Atlas Capital Group, LLC ("Atlas"), a foreign limited-liability company
     registered under the laws of the State of New York, is, upon information and belief, the
     holding company of, and has complete dominion and control over, co-Defendant 23rd
     Street Owner, LLC.  Atlas has a N.Y.S. Department of State's ("DOS") Process address
     of c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

15.  Defendant 23rd Street Owner LLC ("23SO"), a foreign limited-liability company
     registered under the laws of the state of New York, is the current owner of the
     Premises.  Said defendant has an address of 450 Park Avenue, 4th Floor, New York, NY
     10022, according to the Premises' N.Y.C. Multiple Dwelling Registration ("the
     MDR"), and has a DOS Process address of c/o Corporation Service Company, 80 State
     Street, Albany, New York 12207.

16.  Defendant ACG Property Management LLC ("ACG"), a foreign limited-liability
     company registered under the laws of the state of New York, and a managing agent of
     the Premises for the current owner, 23rd Street Owner LLC.  Said defendant has an
     address of 450 Park Avenue, 4th Floor, New York, NY 10022, according to the MDR,
     and has a DOS Process address of c/o Corporation Service Company, 80 State Street,
     Albany, New York 12207.

17.  Defendant 2324 Realty LLC ("2324R"), a domestic limited-liability company
     registered under the laws of the State of New York, is the previous owner of the
     Premises, according to a Bargain and Sale Deed dated July 28, 2015 (See Exhibit A).

Said sale and transfer of deed was also recorded by the Automated City Register Information System ("ACRIS"), managed by N.Y.C. Department of Finance, Office of the City Register (See Exhibit B). Said defendant has a DOS Process address of c/o Corporation Service Company, 80 State Street, Albany, New York 12207.

18. Defendant The Dermot Company Inc. ("Dermot"), an inactive domestic corporation, was a managing agent of the Premises for the previous owner, 2324 Realty LLC. Said defendant was merged into Dermot Interim Corp., a Delaware company and an "UNAUTHORIZED BUSINESS CORPORATION" as of June 4, 2015, according to DOS. The Dermot Company Inc. has not filed with the County Clerk of the New York County as to where it has merged into as required by the County Clerk where the company was originally registered. Upon information and belief, on June 4, 2015, Dermot Interim Corp. was merged into or acquired by "THE DERMOT COMPANY, LP", a domestic limited partnership registered in the State of Delaware.

19. Defendant The Dermot Company, LP is not registered with the State of New York but is seemingly doing business as "Dermot", an unregistered assumed or service mark name, with the address of 729 Seventh Avenue, 15th Floor, New York, New York 10019, and has the domain name "dermotcompany.com". Said defendant has a registered agent address of Corporation Service Company, 251 Little Falls Drive, Willington, New Castle, DE 19808.

20. Defendant ABS Partners Real Estate LLC ("ABS") is a domestic limited liability company registered under the laws of the State of New York, was the managing agent of the Premises from around 2007 to around 2013. Said defendant has a DOS Process address of Corporation Service Company, 80 State Street, Albany, New York, 12207.

21. Defendant Helmsley-Spear, Inc. is a domestic business corporation registered under the

5

laws of the State of New York, was the managing agent of the Premises when Plaintiff entered into the original lease agreement commenced in October, 2005.  Said defendant has a DOS Process address of C/O President, 60 East 42nd St., New York, NY 10165.

22. Defendant JEFFREY A. GOLDBERGER ("Mr. Goldberger") is a natural person and the Head Officer of owner of the Premises according to the MDR.  Upon information and belief, Mr. Goldberger is a principal officer of Atlas Capital Group, LLC and 23rd Street Owner, LLC.

23. Defendant ANDREW B. COHEN ("Mr. Cohen") is a natural person and an Officer of owner of the Premises according to the MDR.  Upon information and belief, Mr. Cohen is a principal officer of Atlas Capital Group, LLC and 23rd Street Owner, LLC.

24. Defendant LATOYA WILLIAMS ("Ms. Williams") is a natural person and a managing agent of the MDR.  Upon information and belief, Ms. Williams is currently employed by both Atlas Capital Group, LLC and ACG Management, LLC.

25. Defendant JAIME ROMANO ("Ms. Romano") is a natural person and a general partner according to the MDR.  She is also a Licensed Real Estate Salesperson with the license # 10401252719, expires 8/18/2017.  Ms. Romano is currently employed by Atlas Capital Group, LLC and ACG Management, LLC.

26. Defendant JOEL ORNSTEIN ("Mr. Ornstein"), is a natural person and former on-site property manager.  He is also a Licensed Real Estate Broker with the license # 35OR1010808, expires 3/11/2019.  Mr. Ornstein is currently employed by Atlas Capital Group, LLC and ACG Management, LLC, and was previously employed by The Dermot Company, Inc.

27. Defendant PETER ADAM ROSE ("Peter Rose, Esq.") is a natural person duly admitted to the New York bar and has New York State Unified Court System

("NYSUCS") Attorney Registration Number of 2105823.  Peter Rose Esq. is a general partner of Rose & Rose, which is located at 291 Broadway, Floor 13, New York, New York, 10007, according to Defendant's NYSUCS registration information.

28.  Defendant TODD ANDREW ROSE ("Todd Rose, Esq.") is a natural person duly admitted to the New York bar and has NYSUCS Attorney Registration Number of 2409597.  Todd Rose, Esq. is a general partner of Rose & Rose, which is located at 291 Broadway, Floor 13, New York, New York, 10007, according to Defendant's NYSUCS registration information.

29.  Defendant ROSE & ROSE is an assumed name of a general partnership formed by two individuals, Peter Rose, Esq. and Todd Rose, Esq., is currently registered with the County Clerk of the New York County since 2003, and has represented the Landlord-Defendants named in the instant Complaint.  Said partnership has a principal office at the address of 291 BROADWAY, 13th Floor, NEW YORK, NY 10007.

30.  All Defendants are subject to the jurisdiction of this Court.

## FACTUAL ALLEGATIONS

### A.  *Ownership and Tenancy of Subject Premises*

31.  The subject building has the address of 220 West 24th Street, New York, NY 10011 ("the Building"); is a class 'A' residential apartment building as defined in AC § 27-2004(8)(a); was constructed prior to 1974; and contains six stories and about 118 residential apartments.

32.  The Building is located in the Borough of Manhattan, County of New York, in the City of New York.

33.  The previous owner and landlord of the Building is Defendant 2324 Realty LLC, who

purchased the Building on or about October 1, 1996 from "2324 REALTY COMPANY", according to ACRIS.

34. Plaintiff moved into the Apartment pursuant to a one-year vacancy lease commencing October 1, 2005.

35. Since Plaintiff's signing of his initial lease in 2005, Defendants have proffered him a renewal lease every one to two years and Plaintiff has entered into such leases.

36. At all times relevant, Plaintiff is the tenant of apartment #1T ("the Apartment"), which is located on the first floor of the Building.

37. At all times relevant to this action, Plaintiff's apartment was subject to the Rent Stabilization Law of 1969 (AC § 26-501 *et seq.*)

38. The current owner and landlord of the Building is Defendant 23rd Street Owner LLC, who owns the Building pursuant to a Bargain and Sale Deed dated July 28, 2015, according to documents obtained from Defendants' counsel Rose & Rose.

39. On June 29, 2017, Defendants mailed a renewal lease with the owner's / agent's name and address of: "RPA 23rd Street LLC, ACG Property Management, LLC, 450 Park Avenue – 4th Floor, New York, New York 10022". Atlas has replaced 23rd Street Owner LLC with RPA 23rd Street LLC without making any prior announcements.

40. Plaintiff was informed by a building staff and a tenant that the ownership of the Premises have recently changed hands to a buyer named "Akelius Real Estate Management LLC" but such transaction could not be verified on ACRIS.

### B. *Rent Overcharge, Deceptive Business Practices, Fraudulent Misrepresentations*

41. Defendants 2324 Realty LLC and Helmsley-Spear, Inc. illegally and fraudulently used a vacancy allowance of 20% instead of the legally allowable increase of 17.25% for a one-year rent regulated lease that was made effective between October 1, 2005 and

September 30, 2006.

42. Due to the erroneous vacancy allowance used, Plaintiff has been overcharged by Landlord-Defendants $21.91 every month, before any compounding effect due to periodic rent increases, since October 2005.

43. When Plaintiff took possession of the apartment, there was no gas stove, the refrigerator was a single door old GE brand with a black vertical handle bar and a small freezer compartment inside that needed to be defrosted often. The alloy kitchen sink had a scratched up base underneath with an alloy door that wouldn't shut properly. A portion of a kitchen wall was covered by a metal sheet that covers and has an access to natural gas pipes and risers. The ceramic pedestal sink in the bathroom was old, cracked and chipped. Two of the windows in the Apartment were cracked.

44. 2324R and Helmsley-Spear, Inc could not have as allegedly spent over $1,600 on "New Equipment, Service and Improvement", calculated pursuant to § 19 of Rent Regulation Reform Act of 1993 that was effective at the time prior to Plaintiff moving into the Apartment.

45. Upon information and belief, Plaintiff has been illegally and fraudulently overcharged by Landlord-Defendants for an extra $40 per month as an Individual Apartment Increase ("IAI"), before any compounding effect due to periodic rent increases, since 2005, as nothing new was provided when Plaintiff took possession.

46. Defendants sent Plaintiff monthly rent statements demanding illegal rents in violation of N.Y.C. Rent Guidelines Board Apartment/Loft Orders ("RGB Order") #46, resulting Plaintiff overpaying $38.19 a month for 20 months.

47. Plaintiff has been paying the rent amount on the rent statements until he was given legal advice in May, 2016 to ignore erroneous rent statements and to pay the legally

collectable rent from June, 2016 onwards.

48. Defendants issued rent statements with incorrect rent amounts, bogus fees and total amount due, and Plaintiff have been misled and confused by Defendants.

49. Plaintiff made an answer orally with a court clerk on November 18, 2015 concerning housing court case #LT-082684-15.

50. Plaintiff made counterclaims and defenses on his initial answer of #LT-082684-15 stating, among other things, that rent was fully paid and landlord acknowledged money was missing from Plaintiff's account.

51. Ms. Romano demanded and attempted to collect bogus air conditioner fees in the sum of $1,698.01 from Plaintiff in May, 2016.

52. Interestingly, on July 18, 2016, Ms. Romano submitted a sworn affidavit in opposition begrudgingly and unapologetically acknowledging that Defendants have overcharged Plaintiff due to complete inadvertence and ministerial errors.   Ms. Romano without any firsthand knowledge as she was not employed by ACG or Atlas until around April, 2016 made a conclusion stating that "On the contrary, ministerial error as insignificant as the omission of a checkmark and paperwork lost in the shuffle of the sale of the Building are the only factors present" and she downplayed Plaintiff's legitimate and serious complaint as a simple "gotcha" moment for Plaintiff.

53. Plaintiff alleges Ms. Romano's testimony was incredulous since the type of "complete inadvertence" so described by her should have affected other tenants who were due to take on a renewal lease on or after October 1st and the same erroneous percentage increase should have been applied to the renewal leases of other rent stabilized tenants and not just on Plaintiff's alone.   Indeed, Plaintiff finds it odd that he was seemingly the only person affected by the type of "ministerial error" so conveniently described by Ms.

Romano.  Moreover, Mr. Ornstein was the managing agent and on-site property manager before, during and after the change of ownership in 2015 as Mr. Ornstein was hired by Atlas, ACG and 23SO thereafter, thus Ms. Romano's naïve conjecture that such rent overcharge was not willful should not stand.

54.   More interestingly, it brazenly took Defendants about 309 days from the time Ms. Romano admitted to a rent overcharge on her affidavit in opposition to Plaintiff's countersuit to credit back Plaintiff, albeit partially.  23SO issued a rent statement on or about May 23, 2017 crediting Plaintiff $458.28 and describing such credit as "Reverse Inadvertent Overcharge" in spite of the fact that Plaintiff was overcharged $763.80 in total before interest.

55.   DHCR requires that all rent overcharge must be repaid in a timely fashion and such repayment, interest inclusive, must be paid in the form of cash or check.

56.   Plaintiff has tendered and notated on his rent checks for the months of June, 2017 and July, 2017 that 23SO still owes him money.  Said checks were cashed and accepted by 23SO.

57.   Plaintiff does not owe Defendants any rent at the time of filing of this Complaint.

58.   For the court's convenience, a summary of actual rent history, a would-be rent history if there were no misrepresentations in the original lease, and total amount of overcharge due to 2324R's misrepresentations in the original lease, the overcharge by 23SO from 10/2014 to 6/2016 are included:

| Lease Term | RGB Order # | Allowable vs Actual Increase (%) | DHCR Registered Rent | Actual Rent Collected | Rent Without Fraudulent Mis-representations from 2005 | Annualized Over-charge |
|---|---|---|---|---|---|---|
| 10/05 – 9/06 | 37 | n/a | 996.20 | 996.20 | 934.29 | 742.92 |
| 10/06 – 9/07 | 38 | 4.25 | 1,038.54 | 1,038.54 | 974.00 | 774.51 |

| 10/07 – 9/09 | 39 | 5.75 | 1,098.26 | 1,098.26 | 1,030.00 | 819.09 |
| 10/09 – 9/10 | 41 | 3.00 | 1,131.21 | 1,131.21 | 1,060.90 | 843.69 |
| 10/10 – 9/11 | 42 | 2.25 | 1,156.67 | 1,156.67 | 1,084.77 | 862.77 |
| 10/11 – 9/12 | 43 | 3.75 | 1,200.05 | 1,200.05 | 1,125.45 | 895.18 |
| 10/12 – 9/13 | 44 | 2.00 | 1,224.05 | 1,224.05 | 1,147.96 | 913.07 |
| 10/13 – 9/14 | 45 | 4.00 | 1,273.01 | 1,273.01 | 1,193.88 | 949.57 |
| 10/14 – 9/15 | 46 | 1.0 vs 4.0 | 1,285.74 | 1,323.93 | 1,205.82 | 959.07 |
| 10/15 – 5/16 6/16 –  9/16 | 47 | 0.00 | 1,285.74 | 1,323.93 (8 mo) 1,285.74 (4 mo) | 1,205.82 | 959.07 |
| 10/16 – 9/17 | 48 | 0.00 | 1,285.74 | 1,285.74 | 1,205.82 | 959.07 |
| Total: | | | | | | $10,497.11 |

Note: Annualized Overcharge = (DHCR Registered Rent – Rent Without Fraudulent Misrepresentations from 2005) x 12

59.   For the court's convenience, a chart calculating the overcharge by 23SO is included:

| Lease Term | Rent Paid | Months Overcharged | Collectible Rent | Overcharge Calculation | Treble Damages | Total Overcharge Before Interest |
| --- | --- | --- | --- | --- | --- | --- |
| 10/1/2014 – 9/30/2015 | 1,323.93 | 12 Months | 1,285.74 | 38.19 x 12 months = 458.28 | 38.19 x 12 months x 3 = 1,374.84 | $1,833.12 |
| 10/1/2015 – 9/30/2016 | 1,323.93 | 8 Months | 1,285.74 | 38.19 x 8 months = 305.52 | 38.19 x 8 months x 3 = 916.56 | $1,222.08 |
| | | 20 Months | | $763.80 | $2,291.40 | $3,055.20 |

### C.   *No Stove & Cooking Gas for collectively 9 years 7 months*

60.   Upon information and belief, Defendants certified with DHCR that the Apartment is

equipped with a stove and a refrigerator.   As such, the Registration Apartment

Information issued by DHCR for the Apartment has listed "Stove; Refrigerator" as a

part of "Apartment Services".

61.   Plaintiff's kitchen was missing a gas stove on the day he took possession of the

Apartment on or about October 1, 2005.

62. On or about October 1, 2005, a building staff brought a gas stove to the Apartment and connected said stove to the gas supply.

63. At the time Plaintiff took possession of the Apartment, the building superintendent's first name was Danny ("Danny").

64. On the same day a gas stove was brought into the Apartment, Plaintiff complained to Danny that the gas stove was blocking access to the kitchen sink and preventing the refrigerator's door from opening properly. Plaintiff contended that the size and location of the gas stove was a fire and safety hazard and had asked to have the gas stove replaced with one that would fit inside the kitchen without causing a hazard.

65. Danny and his accompanying staff disconnected and removed said stove from Plaintiff's apartment and capped the outlet of the gas supply. Landlord-Defendants deemed to have received actual notice of the lack of essential service in the Apartment since October, 2005. Danny retired several years later.

66. Plaintiff had resorted to using a portable cooktop he bought for cooking. He had placed the cooktop by the kitchen window.

67. In 2013, Mr. Ornstein became the on-site property manager for the Complex.

68. On March 12, 2014, there was a deadly gas explosion in the East Harlem neighborhood of Manhattan in New York City. Upon information and belief, the event has triggered a wave of building inspections in the City of New York.

69. On March 20, 2014, Defendants commenced the first non-payment eviction proceeding against Plaintiff with materially false statements.

70. In April, 2014, upon information and belief, the Building and/or the Complex had failed to pass an inspection in which the Building was ordered to shut off the supply of

natural gas to all of its residents and to the laundry room.

71. Upon information and belief, an informal tenant association was formed in response to the lack of cooking gas; interruptions to laundry services, inconveniences and disruptions from construction works; the Complex's application for modification of services; and other matters of concern.

72. In various meetings, Plaintiff told the organizers of the tenant association that he was missing a stove and would like to be represented for seeking rent abatement.

73. Ms. Thuy Pham, Esq., an organizer of said tenant association, was collecting signed complaint forms from various tenants who were affected by the gas shut off.   Plaintiff submitted his complaint stating that he did not have a gas stove in his apartment.  Ms. Pham mailed Plaintiff's complaint along with the other tenants' complaints to DHCR.

74. Upon information and belief, Defendants issued a 5% rent abatement for each month residents were affected by the gas shut off.

75. In June 2014, Mr. Ornstein inspected Plaintiff's kitchen and noticed that the Apartment was not equipped with a gas stove but did mention that the building will need access to the Apartment to relay the gas risers and pipes that were located behind Plaintiff's kitchen wall that connects to the gas pipes upstairs.  Plaintiff asked Mr. Ornstein for a rent abatement but was denied on the spot claiming Plaintiff was not affected by the gas shut off.

76. Plaintiff participated in numerous tenants' association meetings between April, 2014 and November, 2014.  In one of those meetings, Mr. Ornstein had ordered a building staff to video record the progress of the tenant's association meeting.  Plaintiff was amongst the participants whom were recorded in said video.   Many meeting participants, including Plaintiff, objected to Mr. Ornstein's insistence of having the

meeting recorded.

77.  Mr. Ornstein threatened to evict Plaintiff and called him names because Plaintiff had

refused to sign a letter crafted by Mr. Ornstein, which, upon information and belief,

would close the complaint Plaintiff had filed with HPD and waive Plaintiff's rights to

receive cooking gas, a gas stove and any recourse to a rent abatement Plaintiff so

entitled.

78.  Contrary to Mr. Ornstein theory that Plaintiff was unaffected by said shut off of gas, it

was actually highly disruptive to Plaintiff.   Plaintiff was required to provide access to

construction, electrical and plumbing workers for about 1 week in January, 2015, so

that workers could survey the Apartment, partially demolish a kitchen wall, ceiling and

floor to access and replace gas pipes, rewire electrical outlets, replace kitchen sink and

install a two-range gas cooktop in the kitchen, etc.  The apartment was covered with

dust and debris.

79.  Plaintiff was occupying the Apartment while said demolition, construction and

plumbing works were happening in the kitchen.

80.  Plaintiff was not provided with a protection plan or any protective gear in violation of

AC § 28-104.8.4.

81.  Defendants finally equipped the Apartment with a gas stove with gas supply in

February, 2015. The Building's managements failed to provide a stove in Plaintiff's

apartment for about 9 years and 4 months.

82.  Plaintiff opened a gas account with Con Edison on or about February 18, 2015, and the

account was active through the time when Defendant shut off gas on or about October

13, 2015.  Subsequently, Plaintiff had to apply for a suspension of his gas account to

avoid being charged for the service not available for use.

83. Defendants shut off cooking gas again on or about October 13, 2015 and Plaintiff's apartment was among the affected.  Gas supply resumed on or about January 9, 2016. As such, the Building failed to supply gas to the Apartment for approximately 3 months.

84. Plaintiff did not receive a rent abatement, however, upon information and belief, other tenants in similar situation did receive an abatement for no supply of gas.

### D. *Frivolous Conduct in Civil Litigation*

85. Peter Rose, Esq. and Rose & Rose commenced two vexatious and frivolous non-payment eviction proceedings on behalf of Landlord-Defendants against Plaintiff.  The first one was initiated on March 21, 2014, and another, on November 5, 2015.  Both dispossessory Notice of Petitions were executed by Peter Rose, Esq.

86. Defendants have misrepresented on the Notice of Petition L&T 059069-14 filed on March 20, 2014 that a) Plaintiff has missed paying rent for over a month; b) Plaintiff owed Defendants in the sum of $1,596.01.

87. On April 3, 2014, Peter Rose, Esq. and Plaintiff agreed in the housing court that Plaintiff did not owe any money and Peter Rose, Esq. prepared a stipulation stating as such that Plaintiff "acknowledges owing $1,321.01 representing all rent due through April 30, 2014", and Plaintiff represented that he had already made an online payment to Defendants on March 27, 2014 in the amount of $1,321.01.  All fees on his account were waived.  The stipulation was executed by both parties in court.

88. Defendants have again misrepresented on another Notice of Petition L&T 082684-15 filed on November 5, 2015 that: a) Plaintiff's legal rent was $1,323.93; b) Plaintiff owed Defendants in the sum of $4,795.55; c) Plaintiff missed 3.5 months of rent; and d) Defendants have provided a three day written-notice to Plaintiff as required by law.

89. Defendants failed to effect proper service of process upon Plaintiff in connection with L&T 082684-15 as required by law.   Moreover, the affidavit for said service of process contains fatal errors.

90. Plaintiff did not receive rent demand notice properly in accordance with lease provisions.

91. On or about November 17, 2015, Plaintiff disputed the allegations made on notice of petition L&T 082684-15 with Mr. Ornstein in person and with Ms. Williams on telephone.  Mr. Ornstein directed Plaintiff to speak with Ms. Williams, and Ms. Williams directed Plaintiff to speak with the opposing counsel at Rose & Rose.

92. Mr. Ornstein provided Plaintiff with copies of accounting ledger from Dermot and ACG.

93. On or about November 17, 2015, Plaintiff made a telephone call to Rose & Rose and left a detailed message with a person, named Linda, who answered the call.  Plaintiff told Linda in reference to the allegations made on the notice of petition L&T 082684-15 that the building management has admitted to missing money and Plaintiff asked Linda to have Peter Rose, Esq. to return call.  Peter Rose, Esq. did not return Plaintiff's call.

94. Plaintiff has attempted in good faith to resolve the wrongful claims alleged by Defendants.

95. On November 18, 2015 Plaintiff orally answered said petition and provided his counterclaims to the suit at the Civil Court of the City of New York, County of New York.

96. On the return date of L&T 082684-15, Jeremy Poland, Esq, an attorney representing Rose & Rose approached Plaintiff in the Housing Part of the Civil Court of the City of

New York and asked Plaintiff to sign a stipulation which Plaintiff declined because he has counterclaims against 23SO and would like to resolve those in the same forum.

97. On June 16, 2016, the honorable Judge Maria Milin heard Plaintiff's counter-claims and a proposed settlement in Plaintiff's favor, which was discussed with and calculated by a court attorney on duty and in the presence of both sides of counsel and Plaintiff. Subsequently, the opposing counsel advised that his client has rejected the settlement proposal of $13,000 in Plaintiff's favor.  The parties were called to approach the bench. Judge Milin heard the foregoing negotiated amount and determined to reserve judgement and adjourn.

98. On December 2, 2016, Judge Milin issued her Decision/Order to deny Plaintiff's motion for leave to amend answer; motion for summary judgement; and motion for limited discovery, in their entirety.  Both parties were given a chance to amend their pleadings.

99. On February 2, 2017, that is, after approximately 455 calendar days since Defendant 23rd Street Owner, LLC commenced court proceeding L&T 082684-15 against Plaintiff, said defendant through Todd Rose, Esq. cross-motioned for voluntary discontinuance, which was granted by the honorable Judge Jean T. Schneider, who was substituting for the case in Judge Milin's absence.  Plaintiff's motion for leave to amend answer was denied and deemed as moot by Judge Schneider per her Order/Decision issued on the same day.

100. Defendant 23rd Street Owner LLC admitted in court that no rent was due through January 31, 2017 as per Decision/Order of L&T 082684-15 made on February, 2, 2017. Said Decision/Order allows Plaintiff to seek legal fees from defendant in the case by motion on notice.

101. The merits of Plaintiff's counterclaims were never adjudicated. However, Plaintiff was given an offer to settle with Defendant 23rd Street Owner, LLC for $1,000 in Plaintiff's favor. Plaintiff respectfully declined the offer and was subsequently ordered to try his counterclaims in another forum.

102. On February 2, 2017, Todd Rose, Esq. after making an appearance in court on behalf of Defendant 23rd Street Owner, LLC, approached Plaintiff in the corridor outside of the courtroom of the Housing Court Part E of the Civil Court, County of New York, City of New York and brazenly told Plaintiff, in the presence of Diana Albright Jarvis, Esq., who was Plaintiff's counsel at the time, and Jeremy Poland, Esq., an attorney from Rose & Rose, that he was a member of a committee that elect judges, and that his legal fees were high and any further legal actions taken by Plaintiff against his client would be futile and costly. Plaintiff was standing facing Diana Jarvis, Esq. and Todd Rose, Esq. was standing next to her. After the conversation, Plaintiff found Jeremy Poland, Esq. who was standing immediately behind him jotting down notes of the conversation to which he was not a party on his notepad.

103. By reason of the foregoing, Plaintiff reasonably suspects that ex-parte communications may have actually taken place which would be in violation of Rule 2.9 of the Code of Judicial Conduct and has raised his concern of such with Diana Albright Jarvis, Esq.

104. By reason of the foregoing, Plaintiff alleges the conduct of the partners of Rose & Rose fall below the level of conduct required by New York Lawyer's Code of Professional Responsibility to which, upon information and belief, Todd Rose, Esq. and Peter Rose, Esq. have sworn to abide and uphold.

105. In February 2017, Plaintiff commenced 3 small claims suits in the Civil Court against those Landlord-Defendants and their respective agents being held liable for rent

overcharge and for two separate instances of breach of warranty of habitability. On

May 11, 2017, said claims were collectively *sua sponte* dismissed without prejudice by

the honorable judge Shawn Kelly citing that he lacks subject-matter jurisdiction.

Defendants' attorney and Ms. Romano were present in court and acknowledged that

Defendants owed Plaintiff money in the presence of Judge Kelly.

### E. *Bed Bug Infestation & Unsanitary Conditions*

106. Plaintiff's apartment was infested with bed bugs for approximately 4 months from May, 2016, and subsequently, Plaintiff's apartment was infested again for about one and a half month from May, 2017.

107. Upon information and belief, N.Y.C. Department of Health and Mental Hygiene have issued Orders of the Commissioner to Defendants citing the subject premises show the presence of bed bugs in violation of New York City Health Code ("Health Code") § 151.02 and Defendants were ordered to, *inter alia*, eliminate bed bugs and harborage pursuant to Health Code § 151.02(d).

108. Upon information and belief, Defendants had knowledge that an apartment adjacent to or above Plaintiff's apartment was infested with bed bugs prior to Plaintiff's apartment was deemed infested as well.

### *Plaintiff's Apartment's First infestation*

109. Plaintiff was first bitten by bed bugs in the subject premises on or about May 15, 2016.

110. The first time Plaintiff discovered a bed bug crawling on his bed was on May 25, 2016. He complained to Ms. Romano about the incident the same morning.

111. The infestation in the Apartment continued unabated and had worsened to a point where Plaintiff had to stay away from his apartment for approximately 10 days in June, 2016.

112. Upon information and belief, Defendants entered into Plaintiff's apartment without proper notice or express permission while he was away due to said infestation. The original lease Plaintiff entered into does not allow Defendants unfettered access to Plaintiff's apartment.

113. Plaintiff was bitten by bed bugs numerous times from May, 2016 through September, 2016.

114. Plaintiff's apartment received about 4 pesticide treatments and 2 heat treatments in 2016, and about 2 pesticide treatments in 2017.

115. Plaintiff had an allergic reaction to the first pesticide treatment and complained to the management of the same.

116. Ms. Romano had initially refused to treat Plaintiff's bed bug infestation unless Plaintiff wrote a check to pay for a mattress encasement and its installation.

117. Ms. Romano demanded Plaintiff to disassemble his bedframe for treatment of bed bugs. Plaintiff complied but the treatment was not applied as scheduled for days.   Parts of his bedframe were soaked in chemical solution and were placed in bags for approximately 3 weeks.  Plaintiff was deprived of a proper bed in his own home through no fault of his own.

118. Plaintiff's printer was damaged by the second heat treatment on or about June 24, 2017. Plaintiff sought compensation and complied with Ms. Romano's request for receipts and documentation.  Upon receiving the requested documents, Ms. Romano argued that she had already applied the compensation that Plaintiff was seeking towards the cost of the mattress encasement Plaintiff had received for bed bug treatment.  Furthermore, Defendants refused to compensate Plaintiff or to cooperate with him in seeking compensation by withholding from Plaintiff the names and details of the exterminating

company or the insurer(s) of the exterminating company or 23rd Street Owner, LLC. Plaintiff rebutted.  Because of the impasse, Plaintiff had no other recourse but to file a complaint on July 28, 2016, index no. 1707 NSC 2016, against 23SO and ACG in the small claims court for property damages.

119. Defendants withheld reimbursement to Plaintiff until the trial for the case was imminent.  On December 15, 2016, the second court return date, Defendants finally agreed to pay for damages to Plaintiff's laser printer in the amount of $179.64 by stipulation.

### *Plaintiff's Apartment's Second Infestation*

120. Plaintiff's apartment was infested with bed bugs again.  Plaintiff found a live bed bug on his bed in the morning of May 7, 2017 and was bitten by bed bugs while he was asleep the night before.

121. Plaintiff sought medical evaluation twice in May, 2017 and the bites on his body were determined as bed bug bites.

122. On May 9, 2017, defendant Jamie Romano admitted to Plaintiff in person that apartment 1U, an apartment adjacent to Plaintiff's apartment was re-infested and treated for bed bugs in April, 2017.

123. The tenant of apartment 1U told Plaintiff that he was bitten and had made complaints of bed bug bites and sightings in March, 2017, which was more than a month before Plaintiff's apartment was infested the second time.

124. Upon information and belief, the tenant of apartment 2T have made numerous complaints of bed bugs with 311 since he first notice bed bug bites on his body in April, 2016.   At one point, the tenant of apartment 2T communicated with Plaintiff and sent him photos that he was being treated in a hospital for severe allergic reaction from

bed bug bites and that he had no other choice but to staying away from home.

**_Other Related Details_**

125. Upon information and belief, Ms. Jackie Renton, a U.S. Commercial Asset Manager at Atlas had knowledge of the bed bug infestation in the Building and she had engaged with other tenants who were affected by bed bugs in the Building.

126. Upon information and belief, Defendants had demanded payment from Plaintiff and some other tenants for the treatment or eradication of bed bugs.

127. Upon information and belief, Defendants failed to notify, inspect or treat Plaintiff's apartment upon receiving complaint and confirmation of a bed bug infestation in an apartment neighboring Plaintiff's.

128. Ms. Romano required an unreasonably wide time frame for Plaintiff to wait at home for an inspection or corrective action since Plaintiff requested all entries, except for emergency, to his apartment to be made in his presence or in the presence of his representative.  On multiple occasions, Ms. Romano refused to provide Plaintiff with reasonable time estimates and the names of the individuals, or the company such persons represent, to whom Plaintiff need to provide access.  Ms. Romano frequently placed Plaintiff to the bottom of the list for an inspection or treatment.  Plaintiff believes she used that as an excuse for their tardiness and her inability to provide better arrival time estimates to frustrate Plaintiff.

129. Defendants' agents have repeatedly failed to arrive on-time for a scheduled inspection or corrective action.

**F.**  **_Broken and Defective Floors and Moldings_**

130. On October 8, 2009, Plaintiff complained to the building management about the dilapidated condition of the hardwood floor in the Apartment and requested proper

repair to be made.

131. On October 31, 2009, a licensed contractor hired by 2324R inspected the Apartment and acknowledged that about 80 percent of the foundation of the flooring or the subflooring was missing, has fallen apart or rotted, which caused the bulges, depressions and cracks on the flooring.  Furthermore, said contractor noted several spots of the hardwood floor have been chipped away and were exposing rusted nails and splinters.

132. On August 24, 2010, a major sewage backup incident in the bathroom of the Apartment due to improper repair works in apartment #6T has caused extensive personal property damages and has created an immediate health hazard, which constructively evicted Plaintiff for several days.   A building engineering staff acknowledged that the Building's sewage pipes were old and rusty, which have contributed to a partial diversion of raw sewage originated from apartments upstairs into Plaintiff's apartment.

133. Plaintiff's area rug, *inter alia*, was contaminated by the overflow of raw sewage.

134. Defendant 2324R and ABS ignored Plaintiff's request for compensation for the losses and damages incurred through no fault of Plaintiff.  Defendant 2324R did not compensate Plaintiff for the deductible in the amount of $500.

135. Upon information and belief, Defendant 2324R and ABS ignored Plaintiff's renter's insurance company's request for subrogation.

136. Plaintiff made multiple complaints about the state of disrepair of the floor in the Apartment.  The hardwood floor has metal nails sticking out, cracks, crevices, holes and broken molding that could harbor pests; has splinters that have injured Plaintiff's feet; has sustained a flood; and is noisy.  The state of dilapidation of the flooring prompted HPD to issue multiple code violations.

137. On May 22, 2017, Ms. Romano made an unreasonable entry request at Plaintiff's front door and threatened to defame and to take adverse actions against Plaintiff by circulating a newsletter stating Plaintiff was uncooperative.

138. On June 18, 2017, a city inspector reported items of violation, which were certified on June 8, 2017 as corrected but were actually still uncorrected and landlord has been notified as per a "Notice To Occupant of Invalidated Certification" letter sent from HPD indicating Defendants may have made material false statements with HPD.

139. On July 11, 2017, Ms. Romano threatened, harassed and retaliated against Plaintiff by refusing to repair the defective flooring so instructed by HPD by saying "Nothing can be done!" and by citing non-compliance of a lease provision that requires the Apartment to be covered by 80% of carpet, which she said she had previously chosen not to enforce such provision because she acknowledged that no one lives in the cellar under Plaintiff but would now enforce such provision; and by closing the repair request. Plaintiff's area rug was actually ruined due to Defendants' negligence and Plaintiff apartment has been plagued by a series of sewer backups.

### G. *Housing Maintenance Code Violations*

140. For the court's convenience, the chart below shows repeated code violations in the Apartment:

|   | Hazard Class | Description | Violation Seq. No. | Date Reported | Status |
|---|---|---|---|---|---|
| 1 | B | Bedbugs / Entire Apartment | 11798002 | 5/24/2017 | OPEN |
| 2 | A | Broken/Defective Wood Floor / Room | 11787464 | 5/17/2017 | Certification Invalidated |
| 3 | B | Bedbugs / Entire Apartment | 11374809 | 8/31/2016 | Overdue |
| 4 | A | Broken/Defective Nail At Floor / Room | 11374808 | 8/31/2016 | Overdue |
| 5 | B | Bedbugs / Entire Apartment | 11325968 | 7/25/2016 | Overdue |
| 6 | A | Broken/Defective Nail At Floor / Foyer | 11374807 | 8/31/2016 | Overdue |
| 7 | B | Nails Sticking Out Wood Floor / Foyer | 11643085 | 2/07/2017 | Deemed Comp. |
| 8 | A | Broken Door Knob / Floor | 11643086 | 2/07/2017 | Deemed Comp. |

| 9 | A | Metal Nails Sticking Out / Hallway | 11325967 | 7/25/2016 | Deemed Comp. |
|---|---|---|---|---|---|
| 10 | A | Metal Nails Sticking Out / Room | 11325966 | 7/25/2016 | Deemed Comp. |
| | 4B, 6A | | | | |

141. In addition, the Apartment is missing a chain door guard in violation of AC § 27-2043; MDL § 51-c.

### H. *Building Code Violations*

142. The address and lot number stated on the Premises' Certificate of Occupancy, No. 16080, issued on January 31, 1930, were 214-224 West 24th Street – 221-233 West 23rd Street and 27-33, respectively. The Premises' Certificate of Occupancy permits a total of 15 persons on the first floor.

143. Upon information and belief, the building at 220 West 24th Street has 18 apartment units on the first floor and about 20 apartment units from second through sixth floor. At all times relevant, and upon information and belief, the Premises have exceeded the permitted occupancy load by at least 3 people on the first floor, and as such, the Premises is in a persistent state of violation of AC §§ 28-118.3.1 and 28-118.3.2.

144. Upon information and belief, Defendants have made major alteration to the existing exits of the Premises while the Premises were in use or occupied without first obtaining a Certificate of Occupancy certifying compliance with applicable laws and regulations in violation of AC § 28-118.3.3.

145. Upon information and belief, 2324R changed the addresses and lot numbers of the Premises. The address and lot number stated on the Premises' Property Profile Overview from N.Y.C. Department of Buildings' ("DOB") Buildings Information System ("BIS") were 214-226 West 24th Street – 221-233 West 23rd Street. Moreover, Defendants display signs with the address of 220 West 24th Street and 225 West 23rd

Street on lobby doors.  The foregoing indicates the addresses and lot numbers of the Premises are inconsistent with the information stated on the certificate of occupancy and Defendants have not obtained a new or amended certificate of occupancy within one year of such changes in violation of AC § 28-118.3.2.1.

146. Upon information and belief, Defendants failed to maintain building walls ("façades", and individually, "façade") and appurtenances resulting in a late filing fee of $11,000 in 2011. See. DOB Control # 601618

147. Defendants have failed to file a report for the maintenance of façade with DOB within the past 5 years as required by law.  Per BIS, the current status of the building façade is "NR - NO REPORT FILED". See. BIS Control # 801618

148. Upon information and belief, Defendant 2324 Realty, LLC made material false statement with DOB, which resulted in a fine and payment of $4,800.

149. Upon information and belief, Defendant 2324 Realty, LLC was fined by DOB for "THE INSTALLATION OF 3/4"GAS LINE IN THE BAS VENT SUPPLYING THE BOILER PILOT.ALL WORK IS COMPLETED + SYSTEM IS RUNNING", which indicates such installation may have been performed by unlicensed contractors.  See. ECB Violation # 35008799Y, Violation Date: 6/26/2014

150. Upon information and belief, Landlord-Defendants have installed, maintained, replaced or removed an old oil burner and/or gas boiler without a permit and may have performed such works using unlicensed contractors.

151. Upon information and belief, Defendant 23rd Street Owner, LLC was fined by DOB for installing a gas boiler without a permit, which indicates such installation may have been performed by unlicensed contractors.  See. ECB Violation #32075044R, Violation Date: 5/17/2016

152. Plaintiff resides in an apartment located immediately above the boiler room, only separated by wooden floor and other construction materials built in 1920s.

153. Upon information and belief, Landlord-Defendants have failed to obtain the required permits prior to performing works, which include structural changes and construction works, water and gas plumbing works, in multiple apartment units and in the cellar of the Complex, resulting in multiple DOB & ECB violations.

154. Upon information and belief, Landlord-Defendant 23rd Street Owner, LLC commenced electrical work in the Building common areas and/or lobby without a permit for the installation of "HIGH HATS, ELECTRICAL OUTLETS, BRANCH WIRING LEADING OUT FROM ELECTRICAL PANEL" in violation of AC § 27-3018 (B). See. ECB Violation #35123962Z, Violation Date: 6/19/2016

155. In January 2015, Landlord-Defendants performed electrical works in Plaintiff's kitchen without obtaining a permit from DOB while Plaintiff was present in the apartment. Plaintiff did not see any permit posted on his front door or on the lobby doors for such works.

156. In January 2015, Landlord-Defendants performed water plumbing works in Plaintiff's kitchen without obtaining a permit from DOB while Plaintiff was present in the apartment. Plaintiff did not see any permit posted on his front door or on the lobby doors for such works.

157. In January 2015, Landlord-Defendants performed gas plumbing works in Plaintiff's kitchen without obtaining a permit from DOB while Plaintiff was present in the apartment. Plaintiff did not see any permit posted on his front door or on the lobby doors for such works.

158. Upon information and belief, Landlord-Defendants have made structural changes to

masonry exterior walls of the Complex without a permit by installing through-the-wall air conditioner units and by replacing windows and window frames for each of the following apartments and portions of their exterior:

     i. 220 West 24th Street building: 1G, 1P, 1R, 2A, 2J, 2N, 2P, 3E, 3G, 3H, 4A, 4C, 4G, 4J, 4R, 4Q, 5B, 5G, 5K, 5Q, 6O, and/or other units.

     ii. 225 West 23rd Street building: 1F, 1R, 1U, 2A, 2F, 3C, 4A, 4D, 4F, 4P, 5G, 5J, 5M, 6O, 6P, 7Q, 7R, and/or other units,

159. The dimensions of each of the through-the-wall air conditioner sleeve used in the Premises are approximately 17" (H) by 27" (W).  Therefore, about 2 feet 3 inches worth of bricks measured horizontally must have been removed from a façade to give way for each through-the-wall air conditioner Defendants installed on the Premises.

160. The distance measured from the bottom part of an air conditioner sleeve of an apartment to the top part of an air condition sleeve in an apartment immediately below it is about 105 inches, that is, about 8 feet 9 inches.

161. There are multiple instances of more than 4 feet worth of bricks measured horizontally in any 100 sq. ft. of wall area have been removed from a façade in violation of NYCRR § 101-14.   Note that the test area can be rectangular in shape.

162. Upon information and belief, Defendants have failed to properly maintain the elevators in the Complex resulting in multiple violations issued by DOB.

163. Plaintiff uses the elevators to access laundry facilities in the cellar.

164. Upon information and belief, Defendants illegally converted studio apartments into 1-bedroom apartments in the Complex.

165. Upon information and belief, Defendants installed voluntary air conditioning and/or ventilating system in the lobby without obtaining a permit in violation of NYCRR §

101-14.

166. Upon information and belief, Landlord-Defendants have performed various works in the Building without a permit and have been fined multiple times by DOB.

167. On or about July 26, 2017, Con Edison alerted the property management of a gas leak in the Building.

### I. *Trespass*

168. Defendants hold copies of the Apartment keys.

169. Upon information and belief, agents of Defendant 23rd Street Owner LLC entered into Plaintiff's apartment between the dates of December 26, 2015 and February 15, 2016 without proper notice or permission, while Plaintiff was away from home, and had caused a malfunction to the shower and toilet rendering such essential services inoperable.

170. Upon information and belief, agents of ACG, 23SO, and Ms. Romano entered into Plaintiff's apartment between the dates of June 10, 2015 and June 20, 2015 without proper notice or permission, while Plaintiff was away from home; conducted an inspection that was deemed non-emergency; and left a note in his apartment that his apartment has passed a bed bug inspection.  Plaintiff found the note in his apartment upon his return.

171. Plaintiff has made multiple complaints to Ms. Romano, and to her supervisor, Ms. Jackie Renton, about the alleged unlawful entries made to the Apartment.  As of the date of filing of the instant Complaint, Plaintiff has yet to receive an explanation for such occurrences from the building management.

172. Plaintiff filed a police report through 311 about the alleged acts of trespass by Landlord-Defendants and their agents.  The 311 Service Request # is C1-1-

1418763971.

173. Ms. Romano has misused the Premises' BuildingLink system by using another building staff's login to open, close, assign, operate, or comment on a building service request indicating Ms. Romano and the building staff may have a habit not to follow any such security policy and procedure.

174. Plaintiff now wishes to install a smart lock that meets industry security standards for residential use and has an ability to log and alert of any entry made to the Apartment.

175. A rule or provision restricts the size of a lock to no more than 3 inches in circumference, which translates to less than an inch in diameter. A 2-dimensional circle of 3 inches in circumference does not clearly define a physical object that is 3-dimensional in form. Moreover, said rule or provision does not definitively restrict the shape or dimensions of a lock to be installed, and therefore, such restriction shall be deemed insufficiently defined and unenforceable.

176. The cross bore diameter of the Apartment's front door is approximately 2.5 inches. Said restriction would cause a lock that is less than 1 inch in diameter to be insecurely installed, and is inapplicable and unenforceable.

177. A rule or provision requires Plaintiff to provide landlord or his agent with a duplicate key to a lock installed by Plaintiff upon request. However, said provision neither defines nor restricts such key to be physical or virtual in form. Furthermore, it neither defines nor restricts such lock to be purely mechanical or partly electronic in operation.

**J.** *Interception of Oral Communications, Invasion of Privacy and Cyberstalking*

178. When Plaintiff moved into the Building in 2005, there were no doorman stationed outside of his apartment front door and no closed-circuit television ("CCTV") security camera that has a view of his apartment front door continuously all-year-round and

around-the-clock.

179. Plaintiff has established a reasonable expectation of privacy and comfort when he signed the original lease, and he continues to have the same level of expectation and comfort from the date when he signed such lease.

180. On October 21, 2015, 23SO filed an Owner's Application For Modification Of Services ("MOS") with DHCR through RosenBerg & Estis, P.C.

181. Said MOS was supplemented with a petitioner's rider, a list of "Apartment Status" of all apartments and a drawing plan ("Security Plan") prepared by Eastern Security Corporation, Inc.

182. Said Security Plan illustrated the first floor layout of the Complex and was last revised on October 9, 2015.

183. Said Security Plan shows a CCTV camera to be positioned near the Apartment but does not point towards Plaintiff's front door.  It points directly and squarely towards the lobby.

184. Upon information and belief, DHCR did not approve the installation of a CCTV camera that points towards the Apartment front door.

185. 23SO installed numerous CCTV security cameras within and around the Building.  One of those CCTV cameras points to and has a view of Plaintiff's apartment entrance, and at times when Plaintiff's door is open or ajar, a portion of the interior of the Apartment can unavoidably be recorded.

186. Upon information and belief, one or more CCTV security cameras have been operating, all-year-round and around-the-clock, in video streaming and capturing mode since 2016.

187. Plaintiff was told by a building staff that the CCTV camera system has facial

recognition capability and other analytical aids for the computerized identification and matching of persons of interest entering and leaving the subject premises.

188. Plaintiff was told by a building staff that one or more CCTV security cameras have been operating and listening to conversations in the lobby and hallways. That building staff has often spoken to Plaintiff in a lowered voice while in the lobby since the installations of the CCTV security cameras, and has, at times, motioned him away from a nearby security camera to talk by the curbside.

189. Defendants have not provided any acceptable use, privacy or retention policy in relation to the collection, storage, transformation or deposal of any recorded video footage, still images, audios, and biometric data of the tenants of the Building.

190. Upon information and belief, Defendants have hired private investigators to conduct online and/or private investigations on tenants of the Premises, and have used the intelligence gathered through those investigations as grounds to effect an eviction or non-renewal of a lease.

### K. *Piercing of Corporate Veil*

191. Atlas owns the internet domain name "atlas-cap.com" and have registered such domain name with GoDaddy.com, LLC since March 29, 2006.

192. The registrant of said domain name is Jeffrey Goldberger. The registrant's address is 225 West 86th Street, Apt. 1001, New York, New York, 10024.

193. Atlas's website front page is located at www.atlas-cap.com

194. Upon information and belief, all Atlas employees, officers and directors have an email address with the domain name of "atlas-cap.com", case insensitive.

195. Plaintiff has received rent statements stating "FOR QUESTIONS PLEASE CALL LATOYA WILLIAMS AT 212-554-2253 OR EMAIL LWILLIAMS@ATLAS-

CAP.COM"

196. Atlas states the following on its website:

"Atlas Capital Group, LLC was founded in March, 2006 to invest in *opportunistic,*
*value-added real estate transactions globally*. Atlas has formed strategic

partnerships with institutional investors who co-invest alongside Atlas. Atlas'

portfolio consists of over $2.5 billion of residential, office and retail assets in New

York City, Boston, Washington, D.C., Los Angeles, Miami, London and Dublin.

Atlas is a full service real estate investment, development and management firm.

More specifically, *we specialize in repurposing and repositioning existing*

*properties*, as well as assets with specific issues such as incomplete construction,

leasing risk, legal disputes, and inefficient expense management. Our in-house

expertise allow us to resolve these issues and thus to create value. These disciplines

include property management, construction, leasing, accounting, legal and financial

analysis."  (emphasis added)  See Uniform Resource Locator (hereinafter "URL") :

http://www.atlas-cap.com/about-us.php

197. Furthermore, Atlas listed the real property where Plaintiff resides as a part of its

investment portfolio, which states:

"The property is comprised of two buildings located at 225 W. 23rd Street and 220

W. 24th Street. Measuring 123,731 gross square feet, the property consists of 246

studio units and has approximately 4,000 square feet of retail space on the ground

floor of the 23rd Street building. The property is well located in the Chelsea

submarket of Manhattan between 7th and 8th Avenues, a market that offers a rich

amenity base with close proximity to employment centers including Midtown

South and "Silicon Alley." The 225 W. 23rd Street building is situated on the same

34

block as the 1 Subway line, a Crunch Fitness and a New York Sports Club Facility. There is a Whole Foods market located across the street from the entrance of 220 W. 24th Street." See URL: http://www.atlas-cap.com/portfolio/23rd-street-and-24th-street.php

198. Upon information and belief, Atlas engages in the trade of high risk commercial real estate investments and seeks to reposition and repurpose the Complex, from a property predominately comprised of rent regulated apartments to market-rate apartments.

199. Upon information and belief, Atlas created 23rd Street Owner LLC as a corporate veil to insulate itself from high operational and legal risks, and as a conduit to syphon moneys from running a trade that seemingly aims to exploit rent stabilized tenants and to remove them from their homes.

### FIRST CAUSE OF ACTION: RENT OVERCHARGE & FRAUDULENT MISREPRESENTATIONS
(as to all Defendants)

200. The allegations set forth in the instant complaint are re-alleged herein.

201. Landlord-Defendants have a pattern of overcharging Plaintiff, and have, upon information and belief, fraudulently willfully and misrepresented on official documents to DHCR and on the original lease that Plaintiff was subject to a 20% vacancy increase instead of 17.25% and have falsely representing that new appliances, equipment, services or improvements would be provided. Landlord-Defendants should have known the representations were false. Those misrepresentations were made with an intent to defraud Plaintiff, which resulted in Plaintiff being overcharged $61.91 a month before interest since 2005, resulting in actual damages of over $10,000.

202. Defendants willfully and fraudulently misrepresented on the 2014 renewal lease,

resulting in an overcharge of $38.19 a month for 20 months, and an actual damages of $763.80

203.  Plaintiff has been overcharged in his rent pursuant to AC § 26-512, and he is entitled to a refund of the overcharges collected, plus treble damages and interest because the overcharges were willful.

204. AC § 26-516 creates a presumption of willfulness subject to rebuttal by the owner showing non-willfulness of the overcharge by a preponderance of the evidence.

205. Defendants' charging of late fees and other fees not provided for on the lease constitute rent overcharge in violation of the Rent Stabilization Law and regulations.

206. Defendants have admitted to overcharging Plaintiff, and have, in bad faith, grossly delayed and refused repayment of the entire overcharged amount plus interest in the form of a check or cash as required by law.

207. Defendants, thus far, have only credited Plaintiff with a partial refund warranting a declaration judgment by this Court that the overcharges and the acts or omissions so described were willful in nature.

208. The act of Defendants' issuance of partial credit on Plaintiff's overcharge claim by stating "Reverse Inadvertent Overcharge" on the rent statement issued on or about May 23, 2017 and the issuance of subsequent rent statements confirming such credit and reversal amounts to an interposition of Plaintiff's claim thereby restarting the statute of limitation on the entire debt and all interest due pursuant to CPLR § 203.

209. The overcharges were willful and fraudulent in nature, actual damages, interest and treble damages should be awarded.

### SECOND CAUSE OF ACTION:
### PROFITEERING & DECEPTIVE BUSINESS PRACTICES
(as to all Defendants)

210. The allegations set forth in the instant complaint are re-alleged herein.

211. Defendants' practices of sending rent bills demanding illegal rents and fees and filing for two separate nonpayment petitions in an attempt to evict Plaintiff in Housing Court seeking more than the legal rent violated General Business Law § 349 because those were business practices that were misleading in a material way, and have injured the Plaintiff by causing him to pay rent in excess of what Defendants were entitled to collect.  The practices also constitute harassment as they were practices intended to cause hardship and to cause Plaintiff to surrender or waive rights in relation to his tenancy.

212. Defendants have engaged in a pattern of deceptive practices in charging Plaintiff for unlawful rent prohibited by the Rent Stabilization Law and have been unjustly enriched.

213. As consumers of rental housing, Plaintiff has been deceived and injured by Defendants' material misrepresentations or omissions.

**THIRD CAUSE OF ACTION:**
**BREACH OF WARRANTY OF HABITABILITY**
(as to Defendants Atlas, 23SO, 2324R, ACG, Dermot)

214. The allegations set forth in the instant complaint are re-alleged herein.

215. There exist or have existed in the subject premises conditions dangerous or detrimental to life, health, and safety.  These conditions were not caused by Plaintiff.

216. Defendants failed to provide a working gas stove for approximately 9 years and 4 months from October, 2005, through February, 2015, and subsequently, failed to provide gas for about 3 months from October, 2015, through January, 2016, depriving

Plaintiff of basic services as required by law.

217. Because Defendants' have issued rent abatement to fellow tenants in an amount equivalent to 5% of rent for each month there was an interruption in services causing a gas stove inoperable, Defendants, at a minimum, should provide the same abatement to Plaintiff.

218. Defendants deprived Plaintiff of a kitchen for about 1 week in January, 2015 during which Defendants demolished a portion of kitchen wall, ceiling and floor and had to reconstruct the kitchen, depriving Plaintiff of basic services as required by law.

219. Defendants have refused or failed to take corrective actions on legitimate repair requests made by Plaintiff.

220. Upon information and belief, Defendants failed to disclose and to take proper measures to eradicate bed bugs in the building which caused an infestation thereof in the Apartment from May, 2016 to September, 2016, and, again, from May, 2017 to June, 2017.

221. By reason of its failure to maintain essential services, good repair and a sanitary condition free of pests, Defendants have breached the warranty of habitability under Real Property Law § 235-b.

222. Upon information and belief, Defendants had actual and constructive notice of each of these conditions.

223. As a result, Defendants have caused the value of Plaintiffs' apartment to be diminished, and Plaintiff is entitled to an abatement of the rent for each month in which the conditions existed, in an amount to be determined at trial.

224. Plaintiff seeks the maximum abatement allowable by this Court for each and every established breach of warranty of habitability.

225. Due to the intentional manner in which Defendants wrongfully deprived Plaintiff of

essential services, good repair and sanitary living condition, punitive damages should

be awarded.

**FOURTH CAUSE OF ACTION:**
**PRIVATE NUISANCE**
(as to Defendants Atlas, 23SO, 2324R, ACG, Dermot)

226. The allegations set forth in the instant complaint are re-alleged herein.

227. Defendants'

a) extremely loud and disruptive construction works during weekdays, and

occasionally during after-hour and on weekends without a permit, in the courtyard, lobby

and hallway contiguous and adjacent to Plaintiff's apartment for approximately one-year

from November, 2015, through November, 2016;

b) failure to eradicate bed bugs and have caused Plaintiff's apartment to be infested

with bed bugs for an accumulated period of approximately six months from May, 2016,

through September, 2016, and from May, 2017 to present;

c) failure to provide a gas stove and gas for collectively and approximately 9 years

and 7 months;

d) failure to correct and cure housing code violations in a timely manner;

e) extremely loud construction works in apartment #1U, an apartment adjacent to

Plaintiff's apartment in 2015 for 4 months;

g) unlawful entries made to Plaintiff's apartment; and

h) CCTV camera pointing towards Plaintiff's apartment door

constitute unreasonable interference with the use, comfort and enjoyment of the premises

as leased to Plaintiff.

228. Because Defendants have been hostile to Plaintiff.  The intentional introduction of the

CCTV camera outside of and pointing towards his apartment door substantially, unreasonably interferes with the comfort reasonably expected by Plaintiff, which has significantly deteriorated since 23SO has purchased the Premises in 2015.

229. Based on Defendants' intentional maintenance of the nuisances, Plaintiff has and continue to suffer substantial damages in the use and enjoyment of his apartment.

230. Accordingly, Plaintiff seeks a judgement of actual and punitive damages and an injunction on any private nuisance found to be under the control and direction of Defendants for Defendants' gross disregard and indifference to the impact the construction, bed bug infestations, unlawful entries, lack of essential services and loss of comfort would have and have had on Plaintiff's right to the use, and the level of enjoyment and privacy that he contracted for.

## FIFTH CAUSE OF ACTION:
## FRIVOLOUS CONDUCT IN CIVIL LITIGATION
(as to all Defendants except for Helmsley-Spear, Inc.and ABS)

231. The allegations set forth in the instant complaint are re-alleged herein.

232. Attorney-Defendants have a professional and legal duty to verify all material factual allegations contained in their pleadings when initiating a proceeding against Plaintiff. Furthermore, Attorney-Defendants have a duty to amend or terminate the action against Plaintiff upon finding or receiving confirmation of any material misrepresentation on such pleadings so as to avoid further injuring Plaintiff.

233. Defendants have made material factual statements that were false on notices of petition filed against Plaintiff.

234. In addition, Defendants failed to effect proper service of process as required by law.

235. Defendants had actual and constructive notice of the aforementioned misrepresentations in court filings, but Defendants failed to amend the erroneous pleadings filed against

Plaintiff with the housing court.

236. Defendants had actual and constructive notice of the existence of code violations in the subject premises when filing a dispossessory notice of petition against Plaintiff.

237. Upon information and belief, Landlord-Defendants conspired with the partners of Rose & Rose to engage in a series of vexatious litigations and in a pattern of conduct intended to harass, injure and cause Plaintiff to surrender or waive rights in relation to his tenancy.

238. Because Defendants had failed to obtain judgment against Plaintiff for the relief so sought in housing court proceedings.

239. Because Defendants' delayed in discontinuing their action in housing court against Plaintiff.

240. Because of Defendants' misrepresentations, Plaintiff has been humiliated, defamed and blacklisted on tenant screening reports that are made available nationwide.

241. Because Defendants abused and misused the housing court for want of prosecution.

242. Because attorney-defendant Todd Rose, Esq. attempted to intimidate Plaintiff and boasted that he has voting power and could exercise such power to unduly influence upon court officials.

243. Defendants' conduct violated 22 NY-CRR §§ 130-1.1 (c)(1) and (2) resulting injury to Plaintiff, Plaintiff seeks all appropriate relief and punitive damages pursuant to 22 NY-CRR §§ 130-1.

## SIXTH CAUSE OF ACTION:
## CIVIL TRESPASS
(as to Defendants Atlas, 23SO, ACG, Ms. Romano, Ms. Williams, Mr. Goldberger, and Mr. Cohen)

244. The allegations set forth in the instant complaint are re-alleged herein.

245. Due to the current security setup or the lack thereof and the hostility from defendants, Plaintiff's apartment is conducive and vulnerable to malicious trespass.

246. Defendants entered Plaintiff's apartment without proper notice or express permission constitutes trespass.   Furthermore, Defendants were unable to provide any reason of an emergency nature warranting such entry.

247. Defendants unlawfully entered into Plaintiff's apartment while there was a pending litigation between the parties should be considered as malicious and harassing in nature.

248. Defendants wantonly damaged the Apartment's toilet and shower rendering such essential services unusable for approximately 8 weeks between December, 2015 and February, 2016 while Plaintiff was away.   Defendants' action was intended to render the Apartment inhabitable by his guests if he so choose during his absence.

249. Defendants acted wantonly and maliciously and with intent to harass Plaintiff by conducting an illegal search inside Plaintiff's apartment in June, 2016 under the guise of a bed bug inspection without affording Plaintiff any notice prior to such entry warrant an award of exemplary damages.

250. Plaintiff is entitled to recovery of damages pursuant to CPLR § 214 (4) and any relief deems just and proper.

**SEVENTH CAUSE OF ACTION:**
**VIOLATION OF RIGHT TO PRIVACY AND CYBERSTALKING**
(as to Defendants Atlas, 23SO, ACG, Ms. Romano, Ms. Williams, Mr. Goldberger, and Mr. Cohen)

251. The allegations set forth in the instant complaint are re-alleged herein.

252. Upon information and belief, Defendants have and will use the name, portrait or picture ("Images") of Plaintiff and other tenants for the purposes of trade.

253. None of the Defendants has ever sought or obtained the approval, authorization or

consent of Plaintiff to take, publish, sell, distribute, disseminate, analyze and/or

otherwise exploit any of his portrait or picture for the purposes of trade.

254. None of the provisions of any lease agreement or rider signed by Plaintiff gives up, or

allows Defendants to intrude or trample on, Plaintiff's right to privacy.

255. Upon information and belief, Defendants have in multiple instances opted to renovate

and furnish previously rent stabilized apartments with premium appliances, cabinetry,

and interiors, which are different from the basic ones that a rent stabilized tenant would

get, upon such apartments became vacant.  Defendants have applied for deregulation

for those renovated, vacant apartments which were at the time rent-stabilized.  Upon

receiving approval for deregulation, Defendants charge market rents for the newly

deregulated apartments.  As a result, Defendants' valuation of the property is increased.

256. The foregoing attempts to describe, in whole or in part, Defendant's business or trade

that, upon information and belief, hinges on the successful removal or separation of rent

stabilized tenants from their rent regulated dwellings.

257. In essence, Defendants engage in a trade that thrives on the wrecking of the homes of

rent-stabilized tenants.

258. Defendants have other legal means to investigate and prosecute any tenant who

willfully violate a lease provision, and while doing so do not infringe on Plaintiff's

right to privacy.

259. Defendants have other legal means to make the Premises safe and secure and while

doing so do not infringe on Plaintiff's right to privacy.

260. Upon information and belief, Defendants have and will use any obtained Images, under

the guise of, and piggyback on, any legitimate reasoning Defendants may so assert, but

to harass, and to aid private investigations and unauthorized intelligence gathering, for

the purposes of trade so described herein.

261. Currently there is no recourse, transparency or accountability for any misuse of the Images by Defendants or their agents, who may or may not have been properly vetted or trained in handling such Images, or by an unauthorized person, in the detriment of Plaintiff.

262. Upon information and belief, Defendants have and will use the aforementioned video recordings and/or Images, in their original or derivative form, along with the appropriate metadata, such as, date, time and location, sourced from the installed CCTV security cameras, for an exploitative, commercial purpose, which may result in a pecuniary gain to Defendants and their shareholders in violation of Article 5 sections §§ 50 and 51 of the N.Y. Civil Rights Law.

263. Plaintiff seeks declaratory and injunction relief from this Court to enjoin Defendants from all such activities deemed illegal and to award of all other relief and damages, include exemplary damages, in accordance with Article 5 § 51 of the N.Y. Civil Rights Law.

## EIGHTH CAUSE OF ACTION:
## EAVESDROPPING & INTERCEPTION
## OF ORAL COMMUNICATIONS
(as to Defendants Atlas, 23SO, ACG, Ms. Romano, Ms. Williams, Mr. Goldberger, and Mr. Cohen)

264. The allegations set forth in the instant complaint are re-alleged herein.

265. Upon information and belief, Defendants installed CCTV security cameras that have audio capturing capability, or are upgradeable to enable such capability, and have been surreptitiously recording, or listening to, oral communications made by Plaintiff and others in the common areas, where, at times, Defendants were not physically present and were not a party to those conversations, in violation of New York Consolidated

Laws, Penal Law §§250.00, 250.05 and 18 U.S.C. §§ 2511(1)(a) and (b).

266. Upon information and belief, Defendants have and will continue to intentionally use, endeavor to use, or procure other person to use the installed CCTV security cameras in the common areas of the Building to intercept oral communication made by Plaintiff and others, where Defendants were not and will not be a party to, and have not obtained consent to record, such oral communication in violation of 18 U.S.C. § 2511(1)(a) and (b) and New York Penal Law §§ 250.00, 250.05, 250.10.

267. Even if Defendants have not actually recorded or intercepted any oral communications made by Plaintiff, the actions of Defendants' security staff, acting in his professional capacity and in a conduct sanctioned by Defendants, have reasonably caused Plaintiff to believe that oral communications have been illegally and surreptitiously intercepted.

268. Pursuant to 18 U.S.C § 2520, Plaintiff is entitled to equitable, and declaratory relief and an award of punitive damages.

### NINTH CAUSE OF ACTION:
### RETALIATION BY LANDLORD AGAINST TENANT
### IN VIOLATION OF RPP § 223-B
(as to Defendants Atlas, 23SO, ACG, Dermot, Ms. Romano, Ms. Williams, Mr. Ornstein, Mr. Goldberger, and Mr. Cohen)

269. The allegations set forth in the instant complaint are re-alleged herein.

270. Plaintiff had made good faith complaints under RPP § 235-b, and the actions taken by Defendants violated RPP §§ 223-b (a), (b) and (c).

271. Notwithstanding Defendants have actual and constructive notice that the Apartment had no cooking gas at the time, Defendants commenced a summary proceeding against Plaintiff in bad faith and in retaliation to recover possession of the Apartment.

272. Defendants have retaliated against Plaintiff by unreasonably withholding, delaying or refusing to make good repair in the Apartment.

273. Because Defendants refused to provide rent abatement for the lack of essential services that were provided to other similarly situated tenants.

274. Pursuant to RPP § 223-b Plaintiff is entitled to the recovery of damages and other relief deemed just and proper by this Court.

## TENTH CAUSE OF ACTION:
## HARRASSMENT

(as to Defendants Atlas, 23SO, ACG, Dermot, Ms. Romano, Ms. Williams, Mr. Ornstein, Mr. Goldberger, Mr. Cohen)

275. The allegations set forth in the instant complaint are re-alleged herein.

276. Defendants' repeated interruptions or discontinuances of essential services and failure to correct hazardous conditions for extended periods of duration constitute harassment as defined by AC § 27-2004(a)(48)(b)

277. Defendants fraudulently and grossly inflated any amount allegedly owed and the number of days past due by Plaintiff on court papers and rent statements and Defendants' repeated billing errors amounts to fraud and harassment.

278. Defendants' commencement of frivolous court proceedings against Plaintiff constitute harassment as defined by AC § 27-2004(a)(48)(d).

279. Defendants had threatened to evict Plaintiff because Plaintiff did not agree to sign a letter prepared by Mr. Ornstein which would have caused, *inter alia*, Plaintiff to surrender or waive his right to seek a rent abatement constitute harassment as defined by AC § 27-2004(a)(48)(a).

280. Defendants has threatened to evict and had attempted to evict Plaintiff because, *inter alia*, Plaintiff attended tenant association meetings; tendered a letter in support of a building staff who, upon information and belief, was a member of a property services workers union and was being sanctioned by building management around 2015; lodged

complaints of code violations with 311 and HPD; asserted his rights to challenge

Defendants' applications for service modification or reduction with DHCR constitute

harassment as defined by AC § 27-2004(a)(48)(a).

281. Upon information and belief, Defendants have unlawfully harassed Plaintiff by

engaging in a course of conduct that have substantially interfered with and disturbed

Plaintiff's comfort, repose, peace or quiet.  Defendants' conduct is, and has been,

intended to cause Plaintiff to surrender or waive rights in relation to his tenancy.

282. Defendants have relentlessly and repeatedly attempted to collect illegal and bogus fees,

such as, air conditioner fees, late fees, legal fees and other fees from Plaintiff.

Defendants' conduct is, and has been, intended to cause Plaintiff to surrender or waive

rights in relation to his tenancy.

283. The allegations and conduct mentioned in the instant complaint constitutes a pattern of

harassment in violation of AC § 27-2005(d).  Plaintiff alleges that Defendants illegal

actions are intended to cause Plaintiff to vacate or surrender his apartment or waive his

rights in relation to such occupancy.

284. Upon information and belief, Defendants knowingly and/or willfully violated AC § 27-

2005 and the Rent Stabilization Code.

285. Upon information and belief, Defendants intended to gain final possession of Plaintiff's

rent-stabilized apartment through a pattern of illegal conduct, harassment and

mismanagement.

### ELEVENTH CAUSE OF ACTION:
### RECKLESS ENDANGERMENT
(as to Defendants Atlas, 23SO, ACG, 2324R, Dermot, Ms. Romano, Ms. Williams, Mr. Ornstein,
Mr. Goldberger, and Mr. Cohen)

286. The allegations set forth in the instant complaint are re-alleged herein.

287. Defendants owed a duty of care to Plaintiff as owners and managing agents of the subject premises.

288. Improper gas plumbing work may lead to a pressurized gas explosion and/or gas asphyxiation which may result in death, serious bodily injuries and property damages.

289. Improper electrical work may lead to electrocution or fire which may result in death, serious bodily injuries and property damages.

290. Improper construction work may lead to a collapse of building structure or façade, in whole or in part, which may result in death, serious bodily injuries and property damages.

291. Because Defendants' recklessly and knowingly commenced gas plumbing work of gas meters, oil burner and/or gas boiler in the cellar located immediately beneath Plaintiff's apartment without a permit.

292. Because Defendants recklessly and knowingly commenced gas and water plumbing works, electrical work and partial demolition of a kitchen wall, ceiling and floor in the Apartment without a permit while the apartment was being occupied by Plaintiff.

293. Because Defendants recklessly and knowingly commenced electrical works in the common areas of the Building without a permit while Plaintiff had access to such areas.

294. Because Defendants have repeatedly violated numerous New York City fuel gas codes, the New York City plumbing codes and the New York City mechanical codes.

295. Because Defendants have recklessly and knowingly have used unlicensed contractors for the commencement of aforementioned works without a permit.

296. Because Defendants have failed to maintain, in whole or in part, the façades of a building where Plaintiff resides and has frequent, lawful access to the vicinity of such façades. Furthermore, said façades had undergone significant structural changes over

the past few years.  Such acts or omissions have created a living environment with grave risk of death or serious injury to Plaintiff.

297. Because Defendants' Premises have violated the stipulations on its Certificate of Occupancy by permitting occupancy in excess of 15 persons on the 1st floor of the Building, and have created a grave risk of structural, health and fire safety concern.

298. The aforementioned pattern of conduct created and fostered a dangerous living environment, which may result in death, irreparable harm and/or serious injury to Plaintiff.

299. Pursuant to N.Y. Penal Law §§ 120.25 and 120.20, Defendants' acts and conduct created a grave risk of death, protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ, which evinced a depraved indifference to human life.

300. Pursuant to N.Y. Penal Law § 145.25, Defendants' acts and conduct created a substantial risk of damage to the property of Plaintiff in an amount exceeding $250.

301. The acts and omissions alleged herein were reckless, malicious and made with callous disregard and deliberate indifference to Plaintiff's rights and wellbeing.

302. Because of Defendants' reckless conduct, Plaintiff is entitled to all damages and relief permitted by law.

### <u>TWELFTH CAUSE OF ACTION:</u><br><u>NEGLIGENCE</u>

(as to Defendants Atlas, 23SO, ACG, Ms. Romano, Ms. Williams, Mr. Ornstein, Mr. Goldberger, Mr. Cohen)

303. The allegations set forth in the instant complaint are re-alleged herein.

304. Defendants owed a duty to Plaintiff as owners and managing agents of the subject premises.

305. Defendants have subject Plaintiff to perilous, dangerous or hazardous living conditions.

306. Defendants failed to notify and inspect the Apartment upon knowledge of a confirmed bed bug infestation in a neighboring apartment to Plaintiff's.

307. Because Defendants failed to notify Plaintiff of a hazard, Plaintiff was deprived of his choice to take precautionary, protective or evasive measures to avoid injuries.

308. Because every floor and multiple apartment units on each floor of the Building have had a bed bug infestation in temporal proximity to when Plaintiff's apartment was infested and because Plaintiff's apartment was not the originating point of such wide spread recurring infestation, it is *prima facie* Plaintiff's apartment was infested due to Defendants' willful failure to contain and eradicate such widespread infestation at the onset, which proximately caused injuries to and suffering upon Plaintiff.

309. Defendants failed to apply *continuous* eradication measures on bed bugs and other pests, which include maintaining the Apartment in good repair and a condition free of harborage to which Defendants owe a duty to upkeep in violation of AC § 27-2018.

310. Because the presence of bed bugs on the Premises is a violation of N.Y.C. Health Code § 151.02.

311. Because Defendants failed to properly repair the broken hardwood floor and molding in the Apartment, and maintaining those housing components in a state of good repair, as evidenced by various city code violation citations, Defendants have provided harborage for bed bugs and other pests, in violation of N.Y.C. Health Code § 151.02, and have contributed to the injuries sustained by Plaintiff.

312. Defendants did recklessly, negligently, wantonly contribute, cause, or foster an environment of unsanitary and hazardous, which proximately caused injury, suffering and pain upon Plaintiff through no fault of Plaintiff.

313. Because Defendants attempted to demand payment or restitution from the tenants of apartment in the Building infested with bed bugs prior to applying treatment.  Such process introduced an unreasonable delay to treatment, and thereby, Defendants have contributed to an unsanitary and hazardous environment, which proximately caused injury, suffering and pain upon Plaintiff.

314. Defendants negligently breached their duty to protect Plaintiff from the environment that the Defendants so created and fostered, which allowed bed bugs to travel from the neighboring apartments under Defendants' ownership and management, and had caused a repeated bed bug infestation in Plaintiff's apartment.

315. That the Defendants knew or should have known that bed bugs do move and spread among neighboring apartments, but negligently, recklessly and wantonly failed to notify or notify timely all parties concerned and to cure such hazardous conditions.

316. Had Defendants diligently and continuously taken to eradicate bed bugs; notify all concerned parties timely; eliminate all harborages and maintain good repair at the onset when bed bugs were first found or reported in the Building, Plaintiff likely would not have been injured.

317. As a result of the negligence of the Defendants, as stated herein, Plaintiff sustained lasting injuries, visible disfigurement and scars, phantom itching, humiliation, embarrassment, insomnia, fear, depression, nervous shock, and severe mental anguish; was compelled to obtain medical evaluation and treatment and will be compelled to undergo further medical evaluations and treatments.

318. Pursuant to General Obligations Law § 5-321, landlords may not exempt themselves from liability for injuries to persons or property caused by the landlord's negligence, or that of the landlord's employees or agents

319. Pursuant to Real Property Law § 259-c, Landlords may not waive a tenant's right to a jury trial in any lawsuit brought by either of the parties against the other for personal injury or property damage.

320. By reason of the foregoing, Plaintiff has been damaged in a sum that exceeds the monetary jurisdiction of all lower courts that might otherwise have jurisdiction of this action.

## THIRTEETH CAUSE OF ACTION:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(as to all Defendants)

321. The allegations set forth in the instant complaint are re-alleged herein.

322. Defendants owed a duty to Plaintiff as owners and managing agents of the subject premises.

323. Defendants' reckless conduct created an unreasonable risk of bodily harm to Plaintiff.

324. The aforementioned conduct was intentionally or recklessly motivated by greed for the purposes of trade causing severe emotional distress to Plaintiff.

325. Because of Defendants frivolous and vexatious litigations have tormented Plaintiff.

326. Because Defendants' actions and omissions are intended to constructively evict Plaintiff from his apartment.

327. Because of the foregoing knowing and willful pattern of conduct, Plaintiff suffered severe emotional distress whose consequences are continuing.

328. By reason of the foregoing, Plaintiff has been damaged in a sum that exceeds the monetary jurisdiction of all lower courts that might otherwise have jurisdiction of this action.

## FOURTEENTH CAUSE OF ACTION:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(as to all Defendants)

329. The allegations set forth in the instant complaint are re-alleged herein.

330. Defendants owed a duty to Plaintiff as owners and managing agents of the subject premises.

331. By reason of the foregoing, Defendants' negligent conduct created an unreasonable risk of bodily harm to Plaintiff.

332. As a consequence of Defendants' negligent conduct, Plaintiff has actually suffered bodily injuries and emotional harm whose consequences are continuing, and Plaintiff is entitled to all damages permitted by law.

333. By reason of the foregoing, Plaintiff has been damaged in a sum that exceeds the monetary jurisdiction of all lower courts that might otherwise have jurisdiction of this action.

### FIFTEENTH CAUSE OF ACTION:
### ATTORNEY'S FEES
(as to all Defendants)

334. The allegations set forth in the instant complaint are re-alleged herein.

335. Plaintiff is entitled to reasonable attorney fees for any such fees Plaintiff has incurred for the prosecution of this action pursuant to the attorneys' fees provision in Plaintiff's lease, which implies a reciprocal right to Plaintiff in the event of Defendant's breach of Plaintiff's lease, and pursuant to the provisions of the Rent Stabilization Law and Code, the provisions of RPL § 234, the provisions of GBL § 349(h); the provisions of RSC § 2526 (9 NYCRR § 2526); the provisions of 18 U.S.C. § 2520.

### SIXTEENTH CAUSE OF ACTION:
### PIERCING OF CORPORATE VEILS
(as to Defendants Atlas, 23SO, ACG, Dermot)

336. The allegations set forth in the instant complaint are re-alleged herein.

337. Defendants have engaged in and conducted risky business practices, which have infringed on Plaintiff's rights as a tenant, and have wrongfully and unjustly injured Plaintiff.

338. Because there is an overlap in ownership, officers, directors and personnel among 23rd Street Owner, LLC, Atlas Capital Group, LLC, ACG Management, LLC and/or RPA 23rd Street, LLC, and because said Defendants share the same New York office address and office equipment.

339. Atlas and its personnel have actively engaged in the day-to-day business affairs and operations of 23rd Street Owner, LLC.

340. Atlas and its personnel have used their email addresses with the domain name "ALTAS-CAP.COM" to communicate with Plaintiff on landlord-tenant issues.

341. Upon information and belief, Defendants transfer assets and/or liability among Defendants without consideration in order to put assets beyond the reach of creditors and claimants amounts to constructive fraud.  As such, Defendants have perverted the privilege to do business in a corporate form.

342. Because Defendant 23rd Street Owner, LLC and ACG Management LLC are Atlas' alter ago, therefore, under the legal doctrine of Alter Ego, their corporate forms may be disregarded to achieve an equitable result.

343. Because Atlas is Atlas' directors' alter ego, therefore, under the legal doctrine of Alter Ego, Atlas' corporate form may be disregarded to achieve an equitable result.

344. Because Dermot has abused its corporate form and has failed to conform to the corporate formalities and filings as required by NYCLS Business Corporation Law §§ 1301, 1302, 1309(a), 1310 and 1311.

345. Because the formation of DERMOT INTERIM CORP and its merging out of existence

on the same day was for the sole purpose of evading and transferring out liability which

originated from the County of New York, the State of New York.

346. By reason of the foregoing, each and every member of Dermot should be held

personally, joint and severally, liable for the injury and suffering Dermot has caused or

contributed to Plaintiff in order to achieve an equitable result.


## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully request the following relief, jointly and severally, as

against all Defendants:

1) finding that the Apartment is subject to rent stabilization pursuant to AC § 26-507;

2) finding Landlord-Defendants have overcharged Plaintiff beyond and above the collectible

rent-regulated rent in violation of RGB Order #46 (2014/2015) resulting in Plaintiff

overpaying $38.19 a month for 20 months; and ordering Landlord-Defendants to pay

$2,596.92 plus interest;

3) finding Landlord-Defendants have made fraudulent misrepresentations and engaged in

deceptive business practices resulting in Plaintiff overpaying by $61.91 before interest

and adjustments every month since 2005; ordering Landlord-Defendants to pay actual

and punitive damages for each and every month Defendants have overcharged during

Plaintiff's tenancy by adopting the continuing wrong doctrine where Defendants have

breached their continuing duty to act in good faith and deal fairly with Plaintiff in the

performance of the lease agreement by committing a series of independent, distinct

wrongful acts or omissions throughout Plaintiff's tenancy as enumerated herein;

4) ordering Landlord-Defendants to restore the true legal regulated rent that is free from any

past misrepresentations and from any compounding effect attributable to any such

misrepresentations, which should arrives to $1,205.82 for the 2016/2017 renewal lease; and to take corrective actions to correct the legal regulated rents filed with DHCR;

5) awarding damages for breach of warranty of habitability due to the lack of a working gas stove and gas supply; a major sewer backup and flooding; defective and broken flooring; bed bug infestations;

6) awarding damages for each occurrence of private nuisance and civil trespass;

7) finding that Housing Maintenance Code violations exist for which Landlord-Defendants received notices of violation and for which the time for correction has expired and awarding civil penalties therefore as provided by AC § 27-2115 (a) and (i);

8) ordering Landlord-Defendants to permanently address and repair the hardwood floor and its subflooring in the Apartment;

9) enjoining Landlord-Defendants from permitting said violations and any future condition of such to exist that may endanger the life, health and safety of Plaintiff;

10) finding Landlord-Defendants' conduct constitutes harassment as defined by AC § 27-2004; and enjoining Landlord-Defendants from engaging in any further harassment and violation pursuant to AC § 27-2115(m)(2) and AC § 27-2121;

11) declaring Landlord-Defendants have misused or deviated from the intended use of the BuildingLink system and any security system approved to be installed on the Premises;

12) finding Landlord-Defendants have intercepted, endeavored to intercept, or procured other person to intercept or endeavor to intercept an oral communication in violation of 18 U.S.C. § 2511, and granting all damages and relief pursuant to 18. U.S.C § 2520;

13) ordering Defendants to hire an independent third party to manage the CCTV security cameras and a third party to audit the implementation of the security policy established for the Premises;

14) enjoining Defendants from using any CCTV video recording or footage for any purpose other than for security and for the prosecution of a crime;

15) ordering Defendants to remove the CCTV camera outside of and in the vicinity of Plaintiff's apartment, or in the alternative, require such CCTV camera to be reconfigured so that it does not have a view of Plaintiff's apartment door and require Defendants to obtain a court order for any subsequent reconfiguration of such CCTV camera and make available all CCTV footages to a tenants' association of the Premises upon request;

16) ordering Defendants to completely purge all CCTV footages and captured images, their meta-data and derivative data within thirty days, or within a duration set by this Court, from the day such footage or image was recorded unless the extended retention of any such footage or image is authorized by an order issued by a competent court or a local law enforcement agency;

17) declaring Defendants' rule about carpeting the floor is unenforceable or waived because of Plaintiff's circumstances stated herein;

18) declaring the lease provision that restrict the size of a lock to no more than 3 inches in circumference is improperly defined, inapplicable or unenforceable;

19) declaring Plaintiff may opt to install any industry certified residential lock that meets American National Standards Institute ("ANSI") or Builders Hardware Manufacturers Association ("BHMA") standards;

20) declaring Plaintiff may opt to provide an access key code or virtual key for emergency use by landlord only;

21) ordering Landlord-Defendants and their agents to, at all times, follow established security and accounting procedure to safeguard and to prevent any misuse or misplacement of a physical or virtual key provided by Plaintiff;

22) finding Landlord-Defendants have made material misrepresentations on official documents;

23) finding Landlord-Defendants have made factually insufficient statements on official documents;

24) declaring Defendants as vexatious or nuisance litigants;

25) ordering sanctions against Attorney-Defendants Todd Rose, Esq. and Peter Rose, Esq. for their misconduct or negligence as described herein and imposing sanctions of $10,000 for each occurrence of frivolous conduct found;

26) directing local law enforcement agencies to investigate Defendants as to whether any of the Defendants have been involved in any scheme of enterprise corruption;

27) finding Landlord-Defendants had failed to file a Tenant Protection Plan with the DOB as required by law for all works performed and completed in the Apartment in January, 2015;

28) determining Landlord-Defendants have failed to obtained the necessary permits from the DOB for all works performed and completed in the Apartment in or about January, 2015 as required by law;

29) finding Landlord-Defendants have failed to obtain a new or amended Certificate of Occupancy for the major alteration works made to the exits in or about 2016 and for the changing of address of the Premises as required by law;

30) finding Landlord-Defendants have violated the permitted occupancy of the Premises and order Landlord-Defendants to take any corrective steps as required by law and regulations;

31) ordering Landlord-Defendants to obtain a new or amended Certificate of Occupancy for the Premises from the DOB pursuant to AC § 28-118.3.2.1 and AC § 28-118.3.3.

32) enjoining Landlord-Defendants from permitting any existing and future work on the Premises without a permit when so required by law or regulation;

33) granting civil penalties in the amount of $10,000 pursuant to AC § 27-115(m)(2);

34) granting civil penalties in the amount of $250 for each violation falsely certified pursuant to AC § 27-2115(a);

35) granting civil penalties in the amount of $50 for each non-hazardous violation pursuant to AC § 27-2115(a);

36) granting civil penalties in the amount of $100 for each hazardous violation and $10 per day from the date set for correction in the notice of such violation until such violation is corrected pursuant to AC § 27-2115(a);

37) On Causes of Action Twelfth through Fourteenth, each in a sum of money having a present value which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction of these matters;

38) Plaintiff prays that this Court will enter judgment to pierce the corporate veil that is harboring the directors and shareholders of 23rd Street Owner LLC, and to hold Atlas and each and every Defendant, personally, jointly and severally, accountable and liable for their alleged transgressions and reckless omissions, which gives rise to the causes of action as enumerated herein, or in the alternative, enter judgement against 23rd Street Owner, LLC and all other Defendants this Court finds liable to Plaintiff.

39) Plaintiff prays that this Court will enter judgment to pierce the corporate veil that is harboring the directors and shareholders of Dermot, and to hold each and every director of Dermot, personally, jointly and severally, accountable and liable for their alleged transgressions and reckless omissions, which gives rise to the causes of action as enumerated herein.

40)   granting such other and further relief as this Court may deem just and proper

Dated: New York, N.Y.
         August 1st, 2017

/s/_____

BERNARD LAM
*Plaintiff*
220 West 24th Street, #1T
New York, New York 10011
9176673697

State of New York

County of New York

*Sworn before me,*

This instrument was signed before me on ___8/1/17_____

by Bernard Lam

Seal:

HECTOR PADILLA
Notary Public – State of New York
NO. 01PA6270383
Qualified in Bronx County
My Commission Expires Dec 16, 2020

_____
*Notary Signature*

*My commission expires on:*

Exhibit **A**

<u>DEED</u>

<u>BARGAIN AND SALE DEED</u>
<u>WITHOUT COVENANTS AGAINST GRANTOR'S ACTS</u>

THIS INDENTURE, made as of this 28th day of July, 2015, by 2324 REALTY LLC, a New York limited liability company having an address c/o Rao & Rao LLC, 550 Mamaroneck Avenue #404, Harrison, New York 10528 (the "Grantor"), to and in favor of 23RD STREET OWNER LLC, a Delaware limited liability company, having an address at c/o Atlas Capital Group, 505 Fifth Avenue, 28th Floor, New York, New York 10017 (the "Grantee").

WITNESSETH, that the Grantor, in consideration of the sum of TEN ($10) DOLLARS and other valuable consideration paid by the Grantee, does hereby grant and release unto the Grantee, the heirs or successors and assigns of the Grantee forever,

ALL that certain plot, piece or parcel of land, with the buildings and improvement thereon erected, situate, lying and being in the Borough of Manhattan and County of New York, City and State of New York, as more particularly described on Schedule "A" annexed hereto and made a part hereof, known as 220 West 24th Street and 225 West 23rd Street, New York, New York.

TOGETHER with all right, title and interest, if any, of the Grantor in and to any streets and roads abutting the above described premises to the center lines thereof,

TOGETHER with the appurtenances and all the estate and rights of the Grantor in and to said premises,

TO HAVE AND TO HOLD the premises herein granted unto the Grantee, the successors and assigns of the Grantee forever.

AND the Grantor, in compliance with Section 13 of the Lien Law, covenants that the Grantor will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

[Signature Page Follows]

IN WITNESS WHEREOF, the Grantor has duly executed this Deed as of the day and year first above written.

GRANTOR:

2324 REALTY LLC

By:

Name:  Michael Field

Title:  Manager

STATE OF NEW YORK          )
                           ) ss.:
COUNTY OF NEW YORK         )

On the 23rd day of July in the year 2015, before me, the undersigned, a Notary Public in and for said State, personally appeared Michael Field personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

DANIELLE MARIE APREA
Notary Public, State of New York
No. 01AP6267202
Qualified in Bronx County
Commission Expires August 13, 2016

- Signature Page to Deed -

## SCHEDULE "A"

### Description of Land

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Manhattan, County, City and State of New York, more particularly bounded and described as follows:

BEGINNING at a point on the northerly side of 23rd Street, distant 475 feet easterly from the north-easterly corner of 23rd Street and 8th Avenue; and

RUNNING THENCE northerly parallel with the easterly side of 8th Avenue, 197 feet 6 inches to the southerly side of 24th Street;

THENCE easterly along the southerly side of 24th Street, 131 feet 3 inches;

THENCE southerly parallel with the easterly side of 8th Avenue, 197 feet 6 inches to the northerly side of 23rd Street; and

THENCE westerly along the northerly side of 23rd Street, 131 feet 3 inches to the point or place of BEGINNING.



*SST*

$ 291,600.⁰⁰

# BARGAIN AND SALE DEED WITHOUT COVENANT
## AGAINST GRANTOR'S ACTS

### 2324 REALTY LLC

#### as Grantor

#### to

### 23RD STREET OWNER LLC

#### as Grantee

Block: 00773
Lots: 0027 and 0056

County:           New York
    City:           New York
   State:           New York

Premises: 225 West 23rd Street and 220 West 24th Street
New York, New York

Dated: As of July 28, 2015

---

Record and return by mail to:

Greenberg Traurig, LLP
200 Park Avenue
New York, New York 10166
Attention: Kristen J. Lonergan, Esq.

REV\82047\0001\592548v2

Exhibit **B**

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2015073101505001001EDD96

| RECORDING AND ENDORSEMENT COVER PAGE | | PAGE 1 OF 5 |
|---|---|---|
| Document ID: 2015073101505001 | Document Date: 07-28-2015 | Preparation Date: 08-03-2015 |

Document Type: DEED
Document Page Count: 4

| PRESENTER: | RETURN TO: |
|---|---|
| FIDELITY NATIONAL TITLE INS. COMPANY<br>485 LEXINGTON AVENUE, 18TH FLOOR<br>NEW YORK, NY 10017<br>212-481-5858<br>amy.bernstein@fnf.com/ title no. 15-35990-NYM | GREENBERG TRAURIG, LLP<br>200 PARK AVENUE<br>NEW YORK, NY 10166<br>Attn: Kristen J. Lonergan, Esq. |

## PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 773 | 27 | Entire Lot | 225 WEST 23RD STREET |

Property Type: COMMERCIAL REAL ESTATE

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| MANHATTAN | 773 | 56 | Entire Lot | 220 WEST 24TH STREET |

Property Type: APARTMENT BUILDING

## CROSS REFERENCE DATA

CRFN_____ or DocumentID_____ or _____ Year_____ Reel_____ Page_____ or File Number_____

## PARTIES

| GRANTOR/SELLER: | GRANTEE/BUYER: |
|---|---|
| 2324 REALTY LLC<br>C/O RAO & RAO LLC, 550 MAMARONECK AVENUE, #404<br>HARRISON, NY 10528 | 23RD STREET OWNER LLC<br>C/O ATLIS CAPITAL GROUP, LLC, 505 FIFTH AVENUE, 28TH FLOOR<br>NEW YORK, NY 10017 |

## FEES AND TAXES

| Mortgage: | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 250.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 1,913,625.00 |
| TAXES: County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 291,600.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | **RECORDED OR FILED IN THE OFFICE** | |
| MTA: | $ | 0.00 | **OF THE CITY REGISTER OF THE** | |
| NYCTA: | $ | 0.00 | **CITY OF NEW YORK** | |
| Additional MRT: | $ | 0.00 | Recorded/Filed 08-10-2015 16:21 | |
| TOTAL: | $ | 0.00 | City Register File No.(CRFN): | |
| Recording Fee: | $ | 60.00 | 2015000276128 | |
| Affidavit Fee: | $ | 0.00 | | |

*City Register Official Signature*